UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DEVAN LAMPE,                                    )
                                               )
                    Plaintiff,                 )
                                               )
        v.                                     )        No. 1:24-cv-01640-SEB-CSW
                                               )
TRENT ALLEN Warden,                            )
FOX Deputy Warden,                             )
REAGLE Commissioner,                           )
ARAMARK CORRECTIONAL SERVICES,                 )
LLC,                                           )
                                               )
                    Defendants.                )

**Order Granting Motion for Summary Judgment as to Defendant Aramark Correctional Services and the Exhaustion Defense**

Plaintiff Devan Lampe filed this action under 42 U.S.C. § 1983 which, as screened, alleges that Aramark Correctional Services, LLC, was at least partially responsible for serving him contaminated kosher meal trays that made him ill. Claims are proceeding against Aramark under the First and Eighth Amendments. Aramark has moved for summary judgment, asserting that Mr. Lampe failed to exhaust administrative remedies related to his claims against Aramark before filing suit as required by the Prison Litigation Reform Act ("PLRA"). For the reasons below, the motion, docket [40], is **GRANTED**.

**I. Summary Judgment Standard**

Parties in a civil dispute may move for summary judgment as a way to resolve a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute over any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party.

1

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour every inch of the record" for evidence that could be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II. Factual Background

### A. Plaintiff's Claims

Mr. Lampe, who is incarcerated at Pendleton Correctional Facility ("Pendleton"), alleges that he is approved to receive a kosher diet. Dkt. 2. In May 2024, Mr. Lampe was put in segregation at Pendleton. *Id.* The kosher meals prepared by Aramark were sent to Mr. Lampe's dorm but were mixed in with non-kosher food trays and served by officers who were not wearing hair nets, beard nets, or aprons. *Id.* Aramark refused to provide such items for staffers. *Id.* The kosher food trays

also were left sitting by the showers and were exposed to contamination by insects and birds before eventually being served to Mr. Lampe hours later, after the food had gotten cold. *Id.* In addition to affecting Mr. Lampe's religious practices, the contaminated food also made him so ill he needed medical attention. *Id.*

Mr. Lampe's undated complaint was filed with the Court on September 18, 2024. *Id.* At screening, the Court allowed both First Amendment religious freedom and Eighth Amendment conditions of confinement claims to proceed against Aramark, Indiana Department of Correction ("IDOC") Commissioner Reagle, Pendleton Warden Trent Allen, and Deputy Warden Fox. The IDOC defendants initially pled but subsequently withdrew the affirmative defense that Mr. Lampe had failed to exhaust administrative remedies. Dkts. 26, 37.

**B. Grievance Process**

The IDOC has a standardized Offender Grievance Process ("OGP") that has been in place September 2020. Dkt. 42-1 at 6 (OGP). To exhaust the OGP, an inmate must: (1) file a grievance on the approved form; (2) pursue an appeal of an unfavorable outcome to the prison warden or the warden's designee; and (3) if that appeal is unsatisfactory, pursue an appeal to the IDOC Offender Grievance Manager. *Id.*; dkt. 101-1 at 8. This is the sole grievance process recognized by the IDOC. *Id.*

To timely initiate the OGP, an inmate must submit the required grievance form to the prison's grievance specialist no later than ten (10) business days after the incident at issue, using State Form 45471. *Id.* at 14. The OGP further provides:

> If an offender does not receive either a receipt or a rejected form from the Offender Grievance Specialist within ten (10) business days of submitting it, the offender *shall notify* the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days.

3

*Id.* (emphasis added).

### C. Plaintiff's Attempts at Exhaustion

On July 20, 2024, Mr. Lampe submitted a grievance complaining about the poor quality and other problems with the kosher meals he was receiving. Dkt. 42-1 at 22 (grievance). It is stamped as "received" on July 24, 2024. *Id.* However, it was not actually "opened" and entered into the IDOC/Pendleton grievance database until October 28, 2024. *Id.* at 23 (grievance records). Meanwhile, on September 22, 2024, Mr. Lampe filed a grievance appeal noting that he had not received any response to his original grievance. Dkt. 44-1 at 2 (grievance appeal). On November 26, 2024, Pendleton Grievance Specialist Amethyst Turner denied the original grievance. Dkt. 42-1 at 25 (grievance response). There is no record that Mr. Lampe attempted to appeal this determination.

### III. Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). To exhaust administrative

remedies, an inmate must "fully" appeal the denial of grievances. *Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005).

Although the exhaustion requirement is strict, it "hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* Thus, "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v. Snyder,* 817 F.3d 1037, 1041 (7th Cir. 2016). "Because exhaustion is an affirmative defense," Aramark has the burden of establishing that "an administrative remedy was available and that [Plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

The Seventh Circuit strictly adheres to the rule that under the PLRA, "exhaustion must precede litigation." *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). This rule is routinely enforced, "even if the plaintiff exhausts his administrative remedies while the litigation is pending." *Id.* "[I]t is essential to keep the courthouse doors closed until [administrative exhaustion] efforts have run their course." *Id.* Thus, in this case, the Court must evaluate Mr. Lampe's efforts at exhaustion as of September 18, 2024, and not a day later. *See id.* (holding suit was subject to dismissal without prejudice under the PLRA for failure to exhaust where grievance process was completed two days *after* plaintiff's complaint was received by district court). As of that date, Mr. Lampe had filed an initial grievance but had not received any response to it, not even acknowledgment of its receipt by the Pendleton grievance office.

5

However, the OGP contains instructions on what to do if an inmate does not receive any acknowledgment that a grievance has been filed for more than 10 days after it was submitted. The inmate must directly notify a grievance specialist of that fact and retain a copy of such notice. Mr. Lampe has provided no evidence to the Court that he attempted to follow this procedure prior to filing this lawsuit. He has submitted evidence that he asked a Pendleton caseworker to confirm when he had handed the grievance to the caseworker. Dkt. 44-1 at 5. But that does not comply with the OGP's procedures for what to do if a grievance is not acknowledged by the grievance office. And whatever Mr. Lampe might have done after September 18, 2024, is irrelevant to the question of whether he exhausted administrative remedies before filing this suit. The designated evidence shows he did not, nor is there any evidence that Mr. Lampe was prevented from attempting to comply with the OGP procedures regarding unacknowledged grievances. Aramark has met its burden of showing that Mr. Lampe failed to exhaust available administrative remedies.

### IV. Conclusion

Aramark's motion for summary judgment is **GRANTED**. Dkt. [40]. Mr. Lampe's claims against Aramark are **dismissed without prejudice**. *See Ford*, 362 F.3d at 401. The **clerk is directed** to terminate Aramark Correctional Services, LLC, as a defendant on the docket.

No partial final judgment will enter at this time. The claims against Defendants Reagle, Allen, and Fox will now proceed on the merits. The Magistrate Judge is requested to set a pretrial schedule for this case moving forward.

**IT IS SO ORDERED.**

Date: _5/18/2026_         _Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

6

Distribution:

All ECF-registered counsel of record via email

DEVAN LAMPE
257022
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only


Magistrate Judge Wildeman's Chambers